UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XTRA LEASE, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED TRANSPORT, INC., an Indiana corporation, as successor to ID UNITED TRANSPORT CORP., an Illinois corporation; UNIVET LLC, an Indiana limited liability company; IRMANTAS ZILYS, an individual; and DIANA ZILYS, an individual,<br><br>  Defendants. | No. 10 CV 5993<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff XTRA Lease, LLC ("Plaintiff" or "XTRA Lease") seeks recovery of a default judgment it won in Missouri state court against a now-dissolved corporation, ID United Transport, Inc. XTRA Lease has moved for summary judgment against Defendants Univet LLC ("Univet") and United Transport, Inc. ("United") on a theory of successor liability. They also seek summary judgment against the individual defendants on a corporate veil-piercing theory. For the following reasons, Plaintiff's motion is granted for successor liability against Univet and denied as to all other claims and parties.

**I. FACTS**

*The Parties*

Plaintiff XTRA Lease is a Delaware limited liability company with its principal place of business in Saint Louis, Missouri.

Defendant United Transport ("United") is an Indiana corporation with its principal place of business in Indiana. It was formed on April 16, 2008. United Transport's President and sole shareholder is Irmantas Zilys. United Transport is an over-the-road trucking corporation that operates within a 300-mile radius of northwest Indiana. It works directly with customers in need of shipping and caters to those customers by offering enclosed "dry van" trucks, refrigerated trucks, and flat-beds. Approximately eighty percent of United Transport's revenues come from a company for which United Transport hauls paper products. That company is new to United Transport and was not a customer of any of the other entities relevant to this lawsuit.

Defendant Univet is an Indiana limited liability company founded on June 16, 2008. Univet's sole shareholder is Diana Zilys.

Irmantas and Diana Zilys, husband and wife, reside together in Naperville, Illinois.[1] Their respective companies occupy neighboring suites, units D1-A and D1-B, at 8300 Broadway in Merrillville, Indiana.

ID United Transport ("ID United"), an Illinois corporation, was operational from 2003 to 2008. It was administratively dissolved on September 11, 2009. Plaintiff states - and Defendants do not contest - that Mr. and Mrs. Zilys were the only shareholders of ID United and that they "served as President and Vice-President, respectively." This is slightly confusing, because corporate records attached as exhibits indicate that while Irmantas Zilys was indeed President of ID United, one Diana Popovaite served as Secretary (not Vice President) of the now-defunct corporation. Zilys and Popovaite were also ID United's directors. Given that the Zilyses do not

---

[1] Neither parties explicitly says so, but given their residence the Zilyses appear to be citizens of Illinois.

contest that they were the sole owners and officers of ID United, I presume that Diana Popovaite is also (or now) known as Diana Zilys and that she was technically a Secretary, not a Vice President.

ID United's business was over-the-road trucking. Its specific business model was to work through transportation brokers to provide trucking services in the lower forty-eight states. They exclusively used non-refrigerated, enclosed "dry vans" as their haulers.

*The Lease*

There is no dispute that, beginning in 2005, Plaintiff and ID United entered into an Equipment Lease Agreement (the "Lease"), under which ID United leased trailers from Plaintiff in exchange for payment. The arrangement evidently worked for both parties for some time, but in 2007 ID United's business began to flag. By March of 2008, the Zilyses, as officers and directors of ID United, decided that the corporation could not survive in its present form. They therefore decided to start off on a "different venture" and ultimately opted to locate that venture in Indiana to take advantage of what they determined to be a more favorable tax and business climate.

With respect to the Lease, Irmantas Zilys swears via affidavit that he spoke with Alex Koch, an operations manager of Plaintiff, in May of 2008. Mr. Koch is claimed to have assured Mr. Zilys that if ID United simply returned the leased trailers in short order, they would be relieved of further payments.

*The Missouri Judgment*

Citing "obligations due and owing" under the Lease in the amount of $155,066.21 stemming from the period of June and July 2008, Plaintiff sued ID United in the Circuit Court of

3

St. Louis County, Missouri. The complaint in that suit was filed on December 16, 2008. It is uncontested that Irmantas Zilys, as registered agent, accepted service of that complaint on behalf of ID United on August 14, 2009. Recognizing service of process and seeing no answer or other plea, the Circuit Court entered a default judgment against ID United on October 16, 2009. The total amount of that judgment is $182,563.09, which includes Plaintiff's claimed amounts from the Lease plus interest and costs.

Defendants concede service of the suit and the fact of the judgment. Defendant has not moved to set aside the default or appealed it in Missouri courts.

*Transactions Involving ID United*

On June 18, 2008, ID United sold substantially all of its equipment, including trucks owned by that corporation, to Univet. The total sale price was $403,310.07, which Diana Zilys swears was fair market value. Some of the equipment was turned around and leased to United for use in trucking operations, some was leased to other corporations, and some sold off entirely.

In May of 2007, when ID United was still operational, Diana Zilys used corporate assets to purchase a Mercedes-Benz for a relative living abroad. The idea was that this money would be immediately replaced by the relative, but the relative was unable to wire the funds to ID United's account, so the funds went directly to Diana Zilys. Ms. Zilys took this wire payment in lieu of shareholder distributions for the next two months.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that therefore the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56( c). *See also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). I

evaluate the evidence in the light most favorable to the party against whom summary judgment is sought, and do not weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Evidence submitted in support of or in opposition to a motion for summary judgment must be admissible in a trial under the Federal Rule of Evidence. *Hemsworth v. Quotesmith.com*, 476 F.3d 487, 490 (7th Cir. 2007). Attestations may be considered, though not when their content directly contradicts other sworn statements by the same party and the sole purpose is to create a triable issue of fact. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999).

**III. DISCUSSION**

A. Preliminary Issue - The Missouri Judgment

Defendants have submitted certain facts and argument tending to imply that they do not owe the debts underlying the Missouri default judgment.[2] However, ID United never appealed or moved to set aside that judgment. The judgment was entered in October of 2009, so the time for challenging that judgment has passed. *See* Mo. Sup. Ct. Rule 74.05(d) (Motions to set aside default judgments "shall be made within a reasonable time not to exceed one year after the entry of the default judgment." ). This court must honor Missouri's judgment, *see* 28 U.S.C. §1738, so for purposes of this litigation there is no question that the erstwhile ID United, Inc. owed $182,563.09 to Plaintiff. The only questions I consider are whether that liability has now attached to any of the defendants here.

---

[2]The most significant example of this is the claim that Alex Koch, Plaintiff's operations manager, waived payments on the Lease beginning in May of 2008.

5

B. Successor Liability

The well-settled general rule of corporate succession is that a successor is not liable for the debts or liabilities of its predecessor. *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997). To offset the potentially harsh application of the rule, Illinois courts apply four longstanding exceptions to the general rule of nonliability. *Id.* A successor can be held liable if 1) there is an express or implied agreement to assume the debts or liabilities of a transferor of assets; 2) the transaction amounts to consolidation or merger; 3) the purchasing corporation is "merely a continuation" of the seller; or 4) the transaction is for the fraudulent purpose of escaping liability. *Id.* at 1175-76. Plaintiff here argues for judgment as a matter of law against corporate Defendants United and Univet on either or both of exceptions 3 and 4.[3]

   i.  Successor Liability - Mere Continuation

The Illinois Supreme Court has stated that a successor corporation may be liable for the debts of another when the purchasing corporation is merely a continuation or reincarnation of the selling corporation. *Id.* at 1176. This happens when "the same or similar management and ownership" simply dress the old corporation up in "different clothes." *Id.* (quotations omitted). The focus is on the corporate entity - i.e., ownership and management - not on the firm's business operations. *Id.*

The genesis of this exception is fraud, *see id.* ("To allow the predecessor to escape liability by merely changing hats would amount to fraud." (quoting *Baltimore Luggage Co. v.*

---

[3]Plaintiff bases its argument on Illinois law, even though there may be some question on this point in that the corporate Defendants are Indiana entities. But Defendant does not contest Plaintiff's choice-of-law assertion. Moreover, it likely does not matter as Indiana law offers the essentially same approach to successor liability issues. *See, e.g., Sorenson v. Allied Prods. Corp.* 706 N.E.2d 1097 (Ind. Ct. App. 1999).

*Holtzman*, 562 A.2d 1286, 1293 (1989))), though proof of fraudulent intent is not required. *Pielet v. Pielet*, Nos. 2-09-0210 & 2-09-0242, 2010 Ill. App. LEXIS 1276, at *77 (Ill. App. Ct. November 25, 2011). What is required is a common identity of officers, directors, and stock between the selling and purchasing corporation. *Vernon*, 688 N.E.2d at 1176. Continuity of shareholders is necessary and is a "key factor" in analyzing the exception. *Hoppa v. Schermerhorn & Co.*, 630 N.E.2d 1042, 1046 (Ill. App. Ct. 1994).

Defendants argue that summary judgment be denied because 1) there are genuine issues of material fact about their intent in selling assets from ID United to Univet, and 2) United and Univet have a different operational business model from ID United. Regarding the first assertion, Defendants point to the following language from *Vernon v. Schuster*: "The [continuation] exception is designed to prevent a situation in which the specific purpose of the successor's acquiring assets is to place those assets out of the reach of the predecessor's creditors." *Vernon*, 688 N.E.2d at 1176. Understandably, Defendants highlight the "specific purpose" wording and claim that such language implies that a showing of fraudulent intent is required. Unfortunately, the Illinois courts do not agree. As mentioned above, Illinois courts have specifically noted that while the continuation exception is rooted in avoiding fraud, it expressly does not require a showing of intent. *See Pielet*, 2010 Ill. App. LEXIS at *77. Indeed, the *Vernon* quote itself says that the exception is "designed to prevent a situation" involving fraud. *Vernon*, 688 N.E.2d at 1176. That is not the same as requiring proof of the fraud itself.

As for Defendants' argument that United and Univet have different business operations than did ID United (i.e., they use a wider variety of trucks than ID United, they have a more regional focus than ID United, and they work directly with the companies needing shipping

7

rather than a broker), *Vernon* explicitly dealt with that argument. The majority opinion in that case expressly rejected a multifactor test for the continuation exception offered by the dissent, stating "the test is...whether there is a continuation of the *corporate entity of the seller* - not whether there is a continuation of the *seller's business operation*." *Id.* (emphasis in original).

The facts of this case satisfy the key requirement of the continuation exception, which is identity of ownership. ID United was owned and managed by the husband and wife team of Irmantas and Diana Zilys exclusively. When that corporation fell on hard times, it sold all of its assets to Univet - a company owned solely by Diana Zilys. Univet was formed on June 16, 2008, and the sale of assets took place just two days afterward on June 18, 2008. Diana Zilys, as sole shareholder and officer of Univet, then leased much of that equipment to her husband and former co-owner in ID United, Irmantas Zilys. This transaction facilitated the brand-new United's trucking business. Diana Zilys, as co-owner (with her husband) of ID United, essentially sold the business's assets to herself as sole owner and officer in the newly-minted Univet. This is clearly a case where ID United has continued its corporate entity but "put on a new coat," *see Nilsson v. Continental Mach. Mfg. Co.*, 621 N.E.2d 1032, 1034 (Ill. App. Ct. 1993) (quoting *Kraft v. Garfield Park Community Hosp.*, 16 N.E.2d 936, 938 (Ill. App. Ct. 1938)), albeit one with "Made In Indiana" on the label.

A final issue bears mentioning. Plaintiff has essentially treated Univet and United as indistinguishable for purposes of successor liability. But it is important to note that it was Univet - and only Univet - that entered a transaction directly with ID United. Plaintiff has made no attempt to explain why the law should treat Univet's lease of equipment to United as part of that

8

transaction. It is therefore only Univet, as purchaser of ID United's assets, that can be deemed successor to ID United.

  ii. Successor Liability - Fraudulent Purpose

Citing no legal authority, Plaintiff asserts in conclusory fashion that the same facts supporting the mere continuation exception also support the fraudulent purpose exception. Those facts plus unspecified others somewhere "in Plaintiff's Statement of Undisputed Facts" are said to prove conclusively that the new entities, United and Univet, were set up for no valid purpose and at a time when ID United and the Zilyses personally were aware of their debts to Plaintiff.

A district court "is not required to scour the party's various submissions to piece together appropriate arguments," or to "make the lawyer's case" for them. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (discussing requirements of summary judgment briefings)*; see also Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) (in-depth explication of summary judgment briefing requirements). As my colleague put it in words equally applicable here: "[a] party must do more than gesture in the general direction of the record and make conclusory assertions about what the record shows." *Ortiz v. City of Chicago*, No. 09 CV 2636, 2010 U.S. Dist. LEXIS 101100, at *43-44 (N.D. Ill. Sept. 22, 2010). Plaintiff's motion for summary judgment on successor liability under the fraudulent purpose exception is denied. Plaintiff remains free to develop this theory for trial. *See id.*

C. Piercing the Corporate Veil[4]

Plaintiff's showing on the piercing the corporate veil allegation falls short of the mark. Therefore, judgment in their favor at this stage is denied.

Plaintiff recognizes - as they must - that a corporation is a legal entity that stands separate and distinct from its owners, directors, and officers, who themselves are generally not liable for corporate debts. *See Peetoom v. Swanson*, 334 Ill. App. 3d 523, 526 (Ill. App. Ct. 2002). This is so even when a corporation is closely held or even owned by a single shareholder. *Id.* at 527.

Plaintiff further cites the proper general test for the exception to the general rule of nonliability. For a court to pierce the corporate veil, two principal requirements must be met: first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 776 (Ill. App. Ct. 2005). Illinois courts are commanded to pierce the corporate veil "only reluctantly." *Id.*

In considering the "unity of interest and ownership" prong, courts look to many factors, such as:

> (1) [I]nadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of

---

[4]As with the successor liability issue, Plaintiffs employ Illinois law to this theory. Defendants do not contest this application either and, again, it likely does not matter. *See, e.g., Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994) (laying out piercing tests and factors substantially the same as Illinois).

10

> creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.

*Id.* at 778-79 (citing *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, (1996)). Inadequate capitalization is a "major factor" in this analysis. *Fiumetto v. Garrett Enters.*, 749 N.E.2d 992, 1005-06 (Ill. App. Ct. 2001); *see also Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 612 (7th Cir. 2009) (aside from direct indicia of corporate form and control, undercapitalization is the "single most important factor in the veil-piercing analysis.")

Plaintiffs did not offer this oft-cited list of factors to consider in their piercing claim, so it is somewhat harder to determine which factors are supposed to be present here. The bare fact of shareholders taking a distribution while a company owes a debt cannot establish personal liability. The episode in which Ms. Zilys had ID United purchase a Mercedes for an overseas relative of hers moves the ball a little because it is relevant to factors (8) and (9). But it is still not enough to win judgment as a matter of law under a theory that courts are commanded to be "reluctant" to apply. *Fontana*, 840 N.E.2d at 776. This is especially so given that Plaintiff has not even discussed undercapitalization - a "major factor" in any veil-piercing analysis. *See Fiumetto*, 749 N.E.2d at 1005-06.

As for the second prong, Plaintiffs incorporate the same two facts from above by reference, then simply state in conclusory fashion that allowing personal nonliability here "would sanction a fraud, promote injustice, and promote inequitable circumstances." This is alleged to be the case because "allowing [Diana and Irmantas] to hide behind the corporate shell" would just be a "way to avoid their responsibilities to [Plaintiff]." While it is true that the transfer of assets for the mere purpose of avoiding the payment of a judgment can satisfy the second prong of a piercing claims, *see Fontana*, 840 N.E.2d at 782, the Zilys's claim they closed down ID

11

United and set up shop in Indiana for its favorable tax and business climate. Perhaps this isn't true, but summary judgment is not the proper stage to weigh these competing explanations for the move.

Plaintiffs may yet establish a basis to hold Diana and/or Irmantas Zilys liable for the debts of their respective corporations on a veil-piercing theory. They have not done so on the undisputed facts unearthed so far.

## IV. CONCLUSION

For the foregoing reasons, summary judgment is GRANTED on the successor liability claim as to Defendant Univet, LLC. As to all other Defendants and all other claims, summary judgment is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: May 5, 2011